UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ENRIQUE ALMEIDA and ELEONORA PARADA,** *Individually and on behalf of Others Similarly Situated,* | § | |
| **Plaintiffs,** | § | |
| v. | § | **CIVIL ACTION NO. H-06-CV-02044** |
| **PROFESSIONAL JANITORIAL SERVICES OF HOUSTON, INC.,** | § | |
| **Defendant.** | § | |

**MEMORANDUM AND ORDER**

Defendant Professional Janitorial Services of Houston, Inc.'s ("PJS") Opposed Motion to Dismiss Certain Opt-In Plaintiffs Pursuant to Valid Arbitration Agreements (Docket No. 29) ("the motion") seeks dismissal of eight plaintiffs.[1] Defendant argues that all eight are subject to binding arbitration agreements that cover their claims. Plaintiffs' Response to the motion (Docket No. 30) concedes that the arbitration agreements would bar their claims if enforced. They argue, however, that the Court should not enforce the agreements because they are substantively unconscionable.[2]

---

[1] The eight plaintiffs are: Heriberto Alvarado, Marina Benitez, Dionicia Flores, Selene Fuentes, Adriana Menchu, Concepcion Ortiz, Rosario Reyes, and Orlando Saracay.

[2] All eight arbitration agreements are identical. The relevant portions of the agreements, which are known to the parties as the Dispute Resolution and Arbitration Policy, read as follows:

> **Application and Coverage:**
> The [arbitration agreement] applies to all employees, regardless of length of service or status, and covers all disputes relating to or arising out of an employee's employment with the Company or the termination of employment. The only disputes or claims not covered by this policy are those described below in the Exclusions and Restrictions section. . . .

## I. Legal Standards

Arbitration agreements are enforceable like any other contract. Federal Arbitration Act, 9 U.S.C. § 2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270-71 (1995); *see also Capital Income Properties–LXXX v. Blackmon*, 843 S.W.2d 22, 23 (Tex.1992) ("The Federal

---

**The Arbitration Process:**

. . . The arbitration will be heard by an independent and impartial arbitrator chosen by you and the Company. . . .

. . . .

. . . The Company and you will share the cost of the . . . filing fee and the arbitrator's fees and costs, but your share of such costs shall not exceed an amount equal to one day's pay (for exempt employees) or eight times your hourly rate (for non-exempt employees), or $250, whichever is less. . . .

. . . .

**Exclusions and Restrictions:**

Certain issues may not be submitted for review (or exclusive review) by arbitration.

*Excluded Issues*: . . . Arbitration . . . does not apply to claims by the Company for injunctive relief and/or other equitable relief for unfair competition and/or the use of unauthorized disclosure of trade secrets or confidential information, relief for which may be sought in court.

**Other Important Information:** . . .

. . . .

*Discovery and Amendment of Claims*: If a dispute is submitted to arbitration, either you or the Company may make a reasonable request for copies of relevant documents from each other, and both parties shall provide each other with a list of the witnesses they intend to call to testify at the arbitration at least ten days before the arbitration, unless otherwise provided by the arbitrator. Depositions and other discovery shall be taken in accordance with the arbitrator's orders. . . .

. . . .

*Authority of the Arbitrator*: The arbitrator has the authority to award any remedy that would have been available to you had you litigated the dispute in court under applicable law. . . .

. . . .

**Agreement to Arbitrate:**

I have read and understand PJS's Dispute Resolution and Arbitration Policy and Agreement and agree to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or termination of my employment with PJS. I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against PJS or any affiliated entities, and each of their employees, officers, directors or agents, and that by agreeing to use arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Dispute Resolution and Arbitration Policy and Agreement. I understand that I can only pursue claims in my individual capacity and not as part of a representative, collective or class action. . . .

I further acknowledge that in exchange for my agreement to arbitrate, the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration . . . .

Def.'s Opp. Mot. Dismiss Certain Pls. (Docket No. 29), Ex. 1, at 6, 8 (emphasis in original).

[Arbitration] Act is part of the substantive law of Texas.") Unlike many other types of contracts, however, arbitration agreements are the beneficiaries of a strong and clear federal policy favoring enforcement. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25 (1991); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). Under Fifth Circuit precedent, a motion to compel arbitration requires two findings from the Court: 1) that, applying Texas rules of contract interpretation, the parties agreed to arbitrate the dispute in question; and 2) that no legal constraints external to the arbitration agreement exist that foreclose the possibility of arbitration. *Tittle v. Enron Corp.*, 463 F.3d 410, 418-19 (5th Cir. 2006).

However, arbitration agreements are also subject to revocation "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996). Among these grounds is the doctrine of unconscionability. *Doctor's Associates,* 517 U.S. at 687; *see also Autonation USA Corp. v. Leroy*, 105 S.W.3d 190, 198 (Tex. App. 2003) (*citing In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001)). Texas state law governs our analysis of unconscionability. *Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 301 (5th Cir. 2004). Under Texas law, there are two types of unconscionability, procedural and substantive: procedural unconscionability refers to the circumstances under which the agreement in question was made; substantive unconscionability refers to the fairness of the agreement itself. *Id.* Either type of unconscionability may be considered in evaluating the validity of an arbitration provision. *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002). "The test for substantive unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause is so one-sided that it is unconscionable under the

circumstances existing when the parties made the contract." *In re Palm Harbor Homes, Inc.* 195 S.W.3d 672, 678 (Tex. 2006) (*quoting In re FirstMerit Bank*, 52 S.W.3d at 756). "The burden of proving the unconscionability rests on the party seeking to invalidate the arbitration agreement." *Carter*, 362 F.3d at 301.

## II. Analysis

Plaintiffs do not dispute that the parties agreed to arbitrate the dispute in question. Pls.' Resp. (Docket No. 30) at 2, 5. Instead, Plaintiffs argue solely that the terms of the agreements are substantively unconscionable because they are one-sided. Specifically, Plaintiffs argue that the arbitration agreements preclude Plaintiffs from filing suit against Defendant (or its affiliated entities, employees, officers, directors, or agents), whereas Defendant (and its directors and officers) are not precluded from filing suit against Plaintiffs for unfair competition and the unauthorized disclosure of trade secrets. Pls.' Resp. at 4-6.

In support of their argument, Plaintiffs cite to two principal cases: *Iberia v. Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159 (5th Cir. 2004), and *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778 (9th Cir. 2002). Both of the cases are distinguishable from Plaintiffs' case, however, for the simple fact that neither case applies Texas law. *Iberia*, a Fifth Circuit case, looks to Louisiana state law, not Texas law, in analyzing the question of whether the arbitration agreement at issue in that case was unconscionable. 379 F.3d. at 167-76. *Ferguson* repeatedly cites to California law, not Texas law, in performing a similar analysis of an arbitration agreement. *Id.* at 782-87. *Ferguson* therefore provides little support to Plaintiffs' argument, particularly given that at least one Texas court has stated that Texas' test for unconscionability, which looks to the

parties' general commercial background, the commercial needs of the trade or case, and the circumstances existing at the time of the agreement, is "somewhat stricter" than California's test, which looks only to whether the contract terms are overly harsh or one-sided. *See In re Media Arts Group, Inc.*, 116 S.W.3d 900, 911-12 (Tex. App. 2003) (*comparing Little v. Auto Stiegler, Inc.*, 63 P.3d 979, 983-84 (Cal. 2003) *and Armendariz v. Foundation Psychcare Services, Inc.*, 6 P.3d 669, 690 (Cal. 2000) *with In re FirstMerit Bank*, 52 S.W.3d at 757). Without any reference to Texas law in its argument, Plaintiffs cannot be said to have carried their burden of proving the arbitration agreements unconscionable.

Moreover, the terms complained of are not obviously so one-sided as to be unconscionable under the relevant case law. In analyzing the substantive unconscionability of arbitration agreements, the Texas Supreme Court has looked to factors such as the protections afforded to the employee in the arbitration process, the availability of discovery, and the availability of remedies through the arbitration process, among others. *See In re Halliburton Co.*, 80 S.W.3d at 572. The arbitration agreements in this case fare reasonably well under this analysis. Plaintiffs participate in the selection of the independent and neutral arbitrator. The agreements limit the amount of arbitration fees that Plaintiffs must pay to a maximum of $250. Fairly extensive discovery provisions (although perhaps not so extensive as allowed under the Federal Rules of Civil Procedure) allow for reasonable document requests, and the arbitrator may permit depositions and other discovery as well. And, importantly, any legal remedy that would be available to Plaintiffs in a court of law remains expressly available to them through the arbitration. *Cf. In re Luna*, 175 S.W.3d 315, 323-24 (Tex. App. 2004) ("[P]reclusion of the two substantive statutory remedies here tends to weigh toward a finding that the agreement's

provisions as a whole are substantively unconscionable.")[3] The terms of the arbitration agreements in this case closely parallel agreements upheld in previous Texas cases, *see, e.g., In re Halliburton Co.*, 80 S.W.3d at 572; moreover, they do not run afoul of any Texas law of which the Court is aware.

The Court must consider the authority offered by Plaintiffs in support of their motion in juxtaposition to both Plaintiffs' burden of showing unconscionability and the Supreme Court's admonition that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer*, 500 U.S. at 26 (quotation omitted). This analysis compels the conclusion that the arbitration agreements in question here are not substantively unconscionable.

## III. Conclusion

Defendant's Opposed Motion to Dismiss Certain Opt-In Plaintiffs Pursuant to Valid Arbitration Agreements (Docket No. 29) is **GRANTED**. Plaintiffs Heriberto Alvarado, Marina Benitez, Dionicia Flores, Selene Fuentes, Adriana Menchu, Concepcion Ortiz, Rosario Reyes, and Orlando Saracay are **DISMISSED** from this action **WITH PREJUDICE**.

**IT IS SO ORDERED.**

---

[3] If injunctive relief is not generally available in arbitration, as Defendant concedes at page 5 of its Reply (Docket No. 31), the agreements do create some remedial asymmetry insofar as they allow Defendants to sue for injunctive relief related to unfair competition, trade secrets, and breach of confidentiality claims. As a preliminary matter, the Court notes that Texas law appears to allow arbitrators to issue injunctions where the arbitration agreement does not explicitly prohibit them. *See J.J. Gregory Gourmet Services, Inc. v. Antone's Import Co.*, 927 S.W.2d 31, 36 (Tex. App. 1995) ("The parties have cited no Texas cases, nor have we found any, specifically prohibiting injunctive relief when the arbitration agreement is silent on this point."); *see also Dallas Cardiology Associates, P.A. v. Mallick*, 978 S.W.2d 209, 215 (Tex. App. 1998); Williams, Elizabeth, *Arbitration and Award,* 7 Tex. Jur. 3d Arbitration and Award § 54 ("The arbitrators may grant injunctive relief if the agreement does not specifically prohibit them from doing so.") If arbitrators can issue injunctions, then there is no asymmetry in the agreements. But even if the arbitrators are prohibited from issuing injunctive relief, practical experience suggests that Plaintiffs are unlikely to bring claims for equitable relief related to unfair competition, trade secrets, and breach of confidentiality claims. The agreements' remedial asymmetry, if any, therefore does not disadvantage Plaintiffs and does not render the agreements, or even the remedial provisions of the agreements, substantively unconscionable.

**SIGNED** this 14th day of November, 2007.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT**