UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENRIQUE ALMEIDA and ELEONORA PARADA, Individually and on behalf of others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>PROFESSIONAL JANITORIAL SERVICES OF HOUSTON, INC.,<br><br>     Defendants. | § § § § § § § § § § § § § | CIVIL ACTION NO. H-06-cv-02044 |

<u>**MEMORANDUM AND ORDER**</u>

## I. BACKGROUND

Before the Court is Defendant's Motion for Summary Judgment (Doc. No. 45). After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that Defendant's Motion for Summary Judgment should be denied.

Plaintiff Eleonora Parada[1] worked for Defendant Professional Janitorial Services, Inc. ("PJS") as a part-time janitor from September 2004 to June 2006.[2]  Plaintiff's shift lasted from 5:00 p.m. to 10:00 p.m., Monday through Friday.  Pls. Dep. 16:16-24; 65: 13-14, June 3, 2008.  During her employment with Defendant, Plaintiff also worked at Elena's Day Care from 8:00 a.m. until 5:00 p.m., Monday through Friday.  (Doc. No. 45,

---

[1] This case originated as a class action with two named Plaintiffs representing the interest of other current and former PJS employees working as janitors throughout Texas. (Doc. No. 1)  On November 14, 2007, the Court dismissed the claims of eight Plaintiffs pursuant to the parties' valid arbitration agreement. (Doc. No. 32.)  On June 14, 2008, the Court dismissed, with prejudice, the claims of eight more Plaintiffs as per the parties' Joint Stipulation of Dismissal. (Doc. No. 42.)  The parties agreed to dismiss the claims of Santos Baten, without prejudice, on June 26, 2008. (Doc. No. 44.)  Finally, the Court granted the Joint Motion to Dismiss as to Panfilo Torralba on August 18, 2008. (Doc. No. 49.)  Eleonora Parada is the only remaining Plaintiff in the case.

[2] These facts are either uncontested or presented in the light most favorable to the Plaintiff.

1

Ex. H.)  In order to arrive at PJS on time, Plaintiff would leave Elena's at 4:50 p.m. or earlier. (Doc. No. 47, Ex. E.)  Plaintiff's immediate supervisor at PJS was Guadalupe Villanueva. Pls. Dep. 64:35.

Defendant maintained extensive payroll records for its employees, including a check history, handwritten time sheets, typed time records, and a paycheck printout. (Doc. No. 45 at 17.)  These records are all derived from the sign-in sheets completed by employees for every shift. Ageitos Dep. 63: 18-23, Aug. 6 2008.  Employees print their name, the time they arrive at work, the time they leave, and sign the document. *Id.* at 64-65: 21-2. Defendant considers it the "employee's responsibility" if the hours on the sign-in sheets are not correct. *Id* at 63:18-23.

Plaintiff brings this action pursuant to the Fair Labor Standards Act ("FLSA"), alleging that she was not paid the minimum wage for all the hours she worked. 29 U.S.C. 29 U.S.C. § 206.  Plaintiff claims that Villanueva gave her blank sign-in sheets but did not allow her to complete her "time in" and "time out." Pls. Dep. 71:1-5.  Villanueva told Plaintiff that she would complete these entries herself at home. *Id.*  Plaintiff never completed the times herself; as a result, the times on the sign-in sheets underreport the number of hours she worked. Pls. Dep. 88: 1-2.

## II. ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

## B. FLSA STANDARD

To prevail, Plaintiff must prove that she performed work for which she was not compensated. *Harvill v.Westward Communications, LLC*, 433 F.3d 428, 441 (5th Cir. 2005) (citing *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)). When the employer does not keep accurate payroll records, however, employees have a relaxed burden of proof. In such cases, an employee need only prove the amount and extent of the work she performed "as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. The burden then shifts to the employer to offer evidence of the precise amount of work performed or to negate the reasonableness of the employee's inference. *Id.* This more permissive standard was created because employees should not be punished for their employer's failure to maintain records. "Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy." *Id.*

## C. DEFENDANT'S EMPLOYEE RECORDS ARE INACCURATE

In both Plaintiff's affidavit and her deposition, she maintains that Villanueva altered her sign-in sheets so that she was not paid for all the hours she worked. Pls. Dep.

76: 18-22; Pls. Aff. ¶ 5.  Another employee, Panfilo Torralba, testified that Villanueva filled in the times on the sign-in sheets and then had the employees sign them.  Torralba Dep. 69: 12-19, June 3, 2008.

The testimony of Plaintiff and Torralba regarding Villanueva's actions raises a presumption that the records do not reflect the actual amount of hours worked.  *Brown v. Family Dollar Store of IN, LP*, 534 F.3d 593, 595 (7th Cir. 2008); *Allen v. Board of Public Educ. For Bibb County*, 495 F.3d 1306, 1316 (11th Cir. 2007).  Allegations that management manipulated time records raise a material issue of fact, even if employees make contradictory statements about the form of manipulation.  *Allen*, 495 F.3d at 1316.  In *Allen*, the plaintiffs gave conflicting accounts regarding their employer's record-keeping practices:

> Some employees testified that they were told not to record their overtime hours because the Board would not pay them overtime. Some recorded their overtime hours, but were made to take back their accurate time sheets and resubmit new time sheets that reflected their scheduled, not actual, hours. At least one plaintiff said that time sheets were torn up if they reflected overtime work. Another said that the individual in charge of time sheets would white out time worked on his time sheets.

*Id.*  While the plaintiffs' testimony conflicted, the court found that, cumulatively, it indicated that the records were inaccurate.  *Id.*

Torralba and Plaintiff both indicate that Villanueva doctored the sign-in sheets; it is possible that she used different methods on different occasions.   Surprisingly, Defendant has not submitted a statement from Villanueva countering these allegations. Any contradictions in Plaintiff's and Torralba's accounts can be explored through cross-examination.  *Allen* at 1317.

Defendant cannot avoid liability by arguing that Plaintiff signed the sign-in sheets, particularly when there are allegations that Villanueva was altering the documents. *Castillo v. Givens*, 704 F.2d 181, 194 (5th Cir. 1983). Delegating record maintenance to employees or an agent does not permit an employer to escape its FLSA obligations. *Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603, 607 (5th Cir. 1966).

### D. PLAINTIFF PROVES A PRIMA FACIE FLSA CLAIM

*Anderson* assigns employees a relatively low burden of proof; therefore, courts regularly accept the employee's self-serving testimony as the only evidence necessary to establish a *prima facie* FLSA claim. *Moon v. Technodent Nat., Inc.*, No. 5:06-cv- 358, 2008 WL 2117053 *3 (M.D.Fla. May 19, 2008); *See. e.g. Castillo v. Givens*, 704 F.2d 181, 195 (5th Cir. 1983); *Park v. Seoul Broadcasting System Co.*, 05-cv-8956, 2008 WL 619034 *6 (S.D.N.Y. March 6, 2008); *Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327, 332 (S.D.N.Y. 2005); *Turner v. Human Genome Science, Inc.*, 292 F.Supp.2d 738, 748 (D.Md. 2003); *Brekke v. City of Blackduck*, 984 F.Supp. 1209, 1220 (D.Minn. 1997).

In the instant case, Plaintiff has met her burden. She testified that she regularly began work at 5:00 p.m. or earlier. Her testimony is supported by the evidence that she regularly left her job at Elena's Day Care at or before 4:50 p.m.; such "triggering facts" can assist the court in determining an employee's schedule. *Brown* at 597. Plaintiff maintains in her affidavit and her deposition that, on four to five occasions, she was asked to work until midnight. Plaintiff's account of her schedule might be somewhat imprecise; these ambiguities can be resolved at trial. *Park*, 2008 WL 619034; *Brekke*, 984 F.Supp. at 1220.

Defendant's sign-in sheets, however, indicate that the Plaintiff worked fewer hours. Throughout the entire period of Plaintiff's employment, her "time in" is listed as 5:00 p.m. on only a few occasions, and the "time-out" is always earlier than 10:00 p.m. (Doc. No. 45, Ex. D 72-1269; Ex. G 1151-1231.) Plaintiff's testimony, coupled with the conflicting time sheets, are sufficient to demonstrate that Plaintiff might have been under-compensated for her work.

Defendant, citing *Harvill*, argues that Plaintiff's evidence is insufficient because she kept no records of the hours she worked. 433 F.3d 428 (5th Cir. 2005). This case is easily distinguishable from *Harvill*, where the plaintiff presented "*no* evidence of the amount or extent of hours she worked without compensation." *Harvill,* 433 F.3d at 441 (emphasis in original). Plaintiff has provided a much more detailed account of her schedule that does not, on its face, appear unreasonable. *Compare Rosales v. Lore*, 149 Fed.Appx. 245, 246 (5th Cir. 2005) (plaintiff claimed to have worked seven days a week, twelve hours a day performing tasks that witnesses stated would only take two to three hours).

## E.  DEFENDANT DOES NOT REBUT EVIDENCE OF PLAINTIFF'S HOURS

Once an employee demonstrates that the employer's records are inaccurate and provides inferential evidence of their uncompensated hours, the employer must present precise records of the hours worked or rebut the reasonableness of the employee's inferences. *Anderson*, 328 U.S. at 687. Defendant has not done so here. While Defendant presents voluminous payroll records, it admits that these documents are all derived from the sign-in sheets Plaintiff claims are false. Ageitos Dep. 63:18-23. Defendant presents affidavits from other employees intending to demonstrate the sign-in

sheets' accuracy; however, these are not persuasive.[3]  (Doc. No. 45, Ex. O.)  None of these employees claim to have been employed at PJS during the same time period as Plaintiff, and none states that Villanueva was their supervisor.  *Id.*  Finally, Defendant does not offer any statement from Villanueva countering the allegations made by Plaintiff and Torralba.

## F. DEFENDANT KNEW THAT PLAINTIFF WAS "EMPLOYED" DURING THE TIMES FOR WHICH SHE WAS UNPAID

In order to recover under FLSA, Plaintiff must prove that Defendant had "actual or constructive knowledge" that she was working during the times for which she was not compensated. *Davis v. Food Lion,* 792 F.2d 1274, 1276 (4th Cir.1986).[4]  An employee is not estopped from claiming that she worked additional hours if "[t]he court found that the employer knew or had reason to believe that the reported information was inaccurate."

---

[3] The affidavits all state "the time sheets I submit to PJS include all hours that I actually worked during that time period.  PJS pays me based on the hours I report to PJS on my timesheets.  PJS never discouraged me from reporting on my timesheet all hours I actually worked for PJS.  My timesheets accurately show the number of hours I actually worked for PJS."  (Doc. No. 45, Ex. O ¶ 4.)

[4] Defendant contends that the sham affidavit rule bars Plaintiff from claiming that Defendant knew she was "employed" during the time for which she was not paid because she gave conflicting answers in her interrogatory responses, affidavit, and deposition.  The sham affidavit rule prevents a party from creating a genuine issue of fact by contradicting her own previous statement without explanation. *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 806 (1999).  The Fifth Circuit requires that the rule apply to "clear answers to unambiguous questions" and limits its application to cases where there are "inherent inconsistencies." *Rollins v. Tech South, Inc.,* 833 F.2d 1525 (11th Cir. 1987) (citing *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 893 (5th Cir. 1980)).

In Plaintiff's interrogatory response, she stated that she was "unable to identify the PJS representatives who were aware she was working off the clock" and that she was "never specifically instructed to work off the clock." (Doc. No. 45, Ex. I at ¶ 3.)  In her deposition, she testified that Villanueva told the employees they would not be paid for working until midnight because the work had not been done correctly.  Pls. Dep. 100:4-10.  Finally, in her affidavit, she claims that she told Villanueva that she was not being paid for all the hours she worked.  Pls. Aff. ¶ 6.

The Court does not believe that such inconsistencies warrant its application of the sham affidavit rule. *Compare Albertson v. T.J. Stevenson & Co., Inc.,* 749 F.2d 223, 232 (5th Cir. 1984) (plaintiff claimed in his deposition that no doctor had examined his liver; in affidavit he claimed the opposite); *Herrera v. CTS Corp.,* 183 F.Supp.2d 921, 926 (S.D.Tex. 2002) (plaintiff claimed for purposes of SSI that he could not work; in later ADA action he tried to assert that he could perform the essential functions of the job).  A court can find a plaintiff credible even when their testimony somewhat contradicts their pre-trial filings. *Doo Nam Yang,* 427 F.Supp.2d at 332.  While these inconsistencies might affect the Plaintiff's credibility at trial, they do not render her affidavit or deposition testimony "a sham." *Rollins,* 833 F.2d at 1531.

*Newton v. City of Henderson,* 47 F.Supp. 746, 749 (5th Cir. 1995) (citing *Brumbelow v. Quality Mills Incorporated*, 462 F.2d 1324, 1327 (5th Cir. 1972)).  Plaintiff asserts that Villanueva knowingly altered the time sheets to reflect fewer hours than Plaintiff actually worked.  Assuming, for the purposes of the pending Motion, that these facts are true, Villanueva would have known Plaintiff was working during the undocumented hours.

## III. CONCLUSION

The Court finds and holds that material factual disputes remain as to the accuracy of the Defendant's payroll records and the number of hours Plaintiff worked. Defendant's Motion for Summary Judgment is hereby **DENIED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the _____ day of October, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**